IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL |
| v. | : | |
| BRIAN D'ALFONSO | : | NO. 03-746 |

FILED

MAY 27 2008

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

### ORDER-MEMORANDUM

**AND NOW**, this 27th day of May, 2008, in accordance with the Order of the United States Court of Appeals for the Third Circuit dated May 7, 2008, there is no probable cause to issue a certificate of appealability under 28 U.S.C. § 2253(c) in connection with this Court's Memorandum and Order of April 15, 2008, dismissing Defendant's Motion pursuant to 28 U.S.C. § 2255.

**IT IS FURTHER ORDERED THAT**:

1. The Motion of Defendant for a Certificate of Appealability (Doc. No. 115) is **DENIED**.

2. The Motion of Defendant for Recusal (Doc. No. 119) is **DENIED**.

3. The Clerk of Court is **DIRECTED** to docket Defendant's letter dated April 29, 2008.

4. Defendant's letter dated April 29, 2008, construed as a motion for reconsideration of the Court's Order of April 21, 2008, permitting Andrew Erba, Esq. to withdraw as defense counsel, is **DENIED**.

---

By Memorandum and Order of April 15, 2008, the Court denied Defendant's § 2255 Motion on the ground that his waiver of appellate and collateral attack rights in his guilty plea agreement was enforceable. Defendant filed a notice of appeal from this decision without first seeking a certificate of appealability from this Court. See 28 U.S.C. § 2253(c)(2). By Order of May 7, 2008, the Third

Circuit remanded the matter to this Court for the sole purpose of either issuing a Certificate of Appealability, or stating reasons why a certificate of appealability should not issue. Defendant has also filed his own Motion seeking a certificate of appealability. Because in his § 2255 Motion, and at the Court's evidentiary hearing on April 3, 2008, Defendant failed to make a substantial showing of the denial of a constitutional right, he is not entitled to a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

Defendant's Motion For a Certificate of Appealability repeats arguments that were raised in his original § 2255 Motion. There are, in addition, two new arguments made by the Defendant. The first concerns the credibility of the testimony given by Attorney Benjamin Cooper and credited by the Court. Defendant has failed to make a substantial showing of the denial of a constitutional right regarding the Court's credibility determination.

The second argument bears the subcaption "Bias Issues with District Judge Padova." Defendant contends in the Motion, as well as in his separately filed Motion for Recusal, that "he is related to District Judge Padova," in that Defendant's Uncle's deceased wife, Lucy Drenkhahn (nee Simpson), was "John Padova's niece." (Def. Mot. to Request COA at unnumbered page 6.) Defendant asserts that circumstances which pertain to his Uncle's relationship with Judge Padova's "niece" allegedly biased Judge Padova against Defendant and his family. Specifically, he avers that at Lucy Drenkhahn's funeral he had a conversation with me and that his "Aunt Betty" identified a women present at the funeral as his Uncle's new girlfriend. (Id. at 6-7.) Without stating how or why, the Defendant asserts that "This bias has Constitutionally deprived D'Alfonso of his rights before the Court of fair and equitable treatment." The allegation of bias is untrue. I have no "bias" against Defendant.

Section C of Cannon 3 of the Code of Judicial Conduct for United States Judges provides that:

> (1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which:
>
> . . .
>
> (d) the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such a person:
> (i) is a party to the proceeding . . . .

Code of Conduct for United States Judges, Canon 3(C)(1), 175 F.R.D. 363, 368 (1998). Section C goes on to state that "the degree of relationship is calculated according to the civil system; the following relatives are within the third degree of relationship: parent, child, grandparent, grandchild, great grandparent, great grandchild, sister, brother, aunt, uncle, niece and nephew; the listed relatives include whole and half blood relatives and most step relatives." Id., Canon 3(C)(3)(a).

Lucy Drenkhahn was my cousin, not my "niece." She died in August of 1999. Thus, Defendant is the nephew of a man, Kenneth Drenkhahn, who was previously married to my deceased cousin. Under Canon 3(C)(3)(a), Defendant is not a person related to me within the third degree of relationship; indeed, he is not related to me by either consanguinity or marriage.

Title 28 U.S.C. § 455(a) requires recusal whenever a judge's impartiality "might reasonably be questioned." 28 U.S.C. § 455(a). Accordingly, a judge should recuse himself where "a reasonable [person] knowing all the circumstances would harbor doubts concerning the judge's impartiality." Blanche Road Corp. v. Bensalem Township, 57 F.3d 253, 266 (3d Cir. 1995) (citing United States v. Dalfonso, 707 F.2d 757, 760 (3d Cir. 1983)). The inquiry focuses not on whether the judge actually harbors subjective bias, but rather on whether the record, viewed objectively, reasonably supports the appearance of prejudice or bias. In re Antar, 71 F.3d 97, 101 (3d Cir. 1995).

The Third Circuit interprets the impartiality requirement of § 455(a) as embodying the "extrajudicial source" doctrine. United States v. Bertoli, 40 F.3d 1384, 1412 (3d Cir. 1994). Under the extrajudicial source doctrine, "bias, in order to form the basis for recusal, must stem from a source outside of the official proceedings." Id. at 1412. The Supreme Court has explained that while the existence of an extrajudicial source is not a necessary condition for a finding of bias or prejudice, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994). Despite the extrajudicial source doctrine, recusal may be required if the judge's actions throughout the course of litigation proceedings, when considered objectively, display a "deep-seated favoritism or antagonism that would make fair judgment impossible." Blanche Road Corp., 57 F.3d at 266. The record, viewed objectively, does not reasonably support such appearance of prejudice or bias.

Defendant entered his plea on May 4, 2004, and was sentenced on January 27, 2005. Defendant did not raise the issue of alleged bias until over three years after he was sentenced, although he asserts he knew of the facts underlying his claim of bias several years earlier. The first time that I became aware of Defendant's alleged family background was when I received a letter addressed to me dated August 26, 2005, from Defendant's sister.[1] I had no awareness of the asserted family connection until I received the letter, six months after Defendant had already been sentenced. I have no recollection of any conversation with Defendant, or even meeting him at the funeral of Lucy Drenkhahn. I also was not contacted by "Aunt Betty" about this case.[2] Had "Aunt Betty"

---

[1] A copy of the letter is appended hereto as Exhibit A.

[2] I assume Defendant is talking about my Aunt Betty, who is not related in any sense to this Defendant and who is now deceased.

spoken to me about this case I would have disqualified myself immediately. There are no circumstances of which I was aware that occurred between Defendant's Uncle and his Uncle's deceased wife which would have, or did, cause me to be biased against Defendant. Moreover, I disclosed the August 26, 2005 letter to the prosecution and defense counsel so that either side could investigate its circumstances and file motions, including requests for recusal. No motion or request was filed.

In April of 2008, the Court conducted an evidentiary hearing on Defendant's § 2255 Motion and the Government's Motion to Dismiss, based on Defendant's plea agreement waiver of the right to collaterally attack his conviction. Before the April 3, 2008 hearing, I again disclosed to counsel for both sides the letter that I had received from Defendant's sister. Neither side made any application based on the letter. The bias allegations were not asserted in the Defendant's previous Motion, raised at the April 3, 2008 hearing, or determined by the ruling of the Court entered on April 15, 2008, and, therefore, cannot form the basis for the issuance of a certificate of appealability from the Court's ruling of April 15, 2008.

In addition to the allegations contained in Defendant's Motion for a Certificate of Appealability, Defendant's Motion for Recusal makes assertions of "collusion and agreement prior to the evidentiary hearing ruling, [and] that the outcome had been decided prior to the April 3, 2008 evidentiary hearing," because he has filed a civil rights action against the Government concerning evidence allegedly withheld from him involving Eugene Carpino. (Def. Mot. for Recusal at unnumbered page 2.)

I was unaware until receiving Defendant's Motion for Recusal that he allegedly filed any such civil rights action. The only discussion of the role of Eugene Carpino in the Court's prior decision on the waiver issue was that the plea agreement contained no provision binding the Government to anything involving Carpino, and thus the prosecutor's alleged statement to Defendant during plea negotiations, that the Government was not interested in Carpino even though he had testified before the grand jury, could not have been a breach of the plea agreement. Defendant's contention that "the trial court is attempting to salvage and protect" the prosecutor, defense counsel and Carpino (id. at unnumbered page 3) is baseless and, viewed objectively, cannot reasonably either support the appearance of prejudice or bias, or form the basis for the issuance of a certificate of appealability from the Court's April 15, 2008 ruling.

Defendant also asserts that he is entitled to a new evidentiary hearing "because the trial court suppressed his evidence at the hearing (audio tapes) and failed to summons; [sic] Elizabeth Ainslie, John Joseph, Jennifer Chun, Eugene Carpino, Carmen DeClerico, Gabriel Santosusso and Ralph Snyder, all who were party to the 2255 Motion." (Id. at unnumbered page 8.) Defendant was represented by counsel at the hearing, and counsel made no request to subpoena any of these individuals. There was no ruling by the Court suppressing evidence. The limited issue upon which the Court heard testimony on April 3, 2008, was the legal effect of Defendant's waiver of collateral relief in his plea agreement. Defendant fails to state how the audio tapes or the testimony of any of these individuals could have been relevant to this limited issue. Viewed objectively, these allegations do not reasonably support the appearance of prejudice or bias, and cannot form the basis

for the issuance of a certificate of appealability from the Court's ruling of April 15, 2008.[3]

BY THE COURT:

_____
John R. Padova, J.

ENTERED
MAY 27 2008
CLERK OF COURT

---

[3]Defendant also seeks reconsideration of the Court's Order of April 21, 2008, permitting his appointed counsel to withdraw from representation. Counsel's request was premised upon his determination, following our ruling on the § 2255 motion, that there were no legal or factual errors for appeal. Because we find that Defendant failed to make a substantial showing of the denial of a constitutional right, and is not entitled to a certificate of appealability, there is no cause to reconsider our Order.

August 26, 2005

Dear Uncle Jack,

I am writing this letter to you on behalf of myself and my entire family regarding my brother Brian D'Alfonso. I'm not sure if you were aware at this time of my brother's court hearing and sentencing that we are family related. My closes and dearest Aunt, Lucy Simpson-Drenkhahn was you niece. She meant the world to me. Even to this day I can not talk or think about her without my eye's tearing up. She meant the world to me. I will hold all the great memories I have of her always close to my heart. About 6 months after her death, I had awoken from my sleep and saw her face leaning over me. As I jumped up in my bed, scared to death and screamed Aunt Lucy that quick she was gone but when she left some how my bedroom door closed. To this day when something weird happens I say out loud I know you're here with me Aunt Lucy because if you knew Lucy she was a dynamite lady but all so a prankster. I tried to keep in touch with Aunt Betty over the phone but she seems to be talking in circles so I just make sure she is doing well. Our once large family is now in its twilight. My mother is now disable with a bad heart, my grandfather is almost bed ridding and my grandmother who is Ken's mother is in a nursing home. I would do anything in the world to bring her home to my house. She basically raised Brian, he was her whole world and I always came in second. When I visit her at the nursing home she always asks were Brian is. I can not tell her were he is because I believe she will not care about life anymore that's how close they are or were. I know my brother is devastated not being able to see them or be there for them. I know I am! I know my brother has made some terrible mistakes in his life and I know we all are not perfect. There's nothing more than he would rather do than put this chapter of his life behind him and be there for his 3 children and family. I'm sorry I am writing this letter in such sorrow but within a couple of month's I have to make the largest discussions of my life. I'm only 37 and have go have open heart surgery. I have a three year old daughter and an 18 year old son. I am the strong and together one in our family. I feel that if something should happen to me our family will fall to pieces and know one would be able to put the pieces back together. I miss my brother terribly everyday. I am asking if you could please find it in your heart to help him and my family in some way.

Thank you,

*Tina D'Alfonso*
Tina D'Alfonso

EXHIBIT A